UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **LISA LASTER**<br>10113 Ellard Drive<br>Lanham, Maryland 20706<br><br>Plaintiff,<br><br>v.<br><br>**NAI, THE MICHAEL COMPANIES**<br>10100 Business Parkway<br>Lanham, Maryland 20706<br>SERVE:<br>Gary Michael<br>President<br>10100 Business Parkway<br>Lanham, Maryland 20706<br><br>Defendant. | Case No.<br><br>**JURY DEMAND** |

## COMPLAINT

Plaintiff, Lisa Laster, by and through her attorneys, Corlie McCormick Jr., Esq. and the McCormick Law Firm, LLC files this Complaint and hereby alleges and states:

### Nature of this Action

1. This is an action under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§12111, et. seq., which incorporates the powers, remedies, and procedures set forth in Title VII, including 42 U.S.C. §§2000e-5.

2. This action is brought by the plaintiff, Lisa Laster because she was denied

1

reasonable accommodations and discharged from her employment because of her disability and in retaliation for engaging in protected activity.  The discrimination and retaliation alleged herein was perpetrated against the Plaintiff by Defendant, NAI the Michael Companies, in violation of federal law.  Plaintiff seeks declaratory relief, back pay, front pay, compensatory and general damages, punitive damages, reasonable attorney's fees, costs and expenses of this action, and such other and further relief as law and justice allow.

## Jurisdiction and Venue

3. This Court has jurisdiction under 28 U.S.C. §1331, and 28 U.S.C. §1343.
4. Venue is proper in this District under 28 U.S.C. §1391.

## Parties

5. Plaintiff, Lisa Laster, is an adult, American citizen of Lanham, Maryland, residing at 10113 Ellard Drive, Lanham, Maryland 20706.  At all relevant times, Plaintiff resided in Maryland and was employed by Defendant, NAI, the Michael Companies.
6. Defendant, NAI, the Michael Companies ("NAI") is a Commercial Real Estate Property Management Services Company headquartered in Prince George's County, Maryland.  NAI employs more than fifteen ("15") persons and has offices in Prince George's County Maryland.

**Exhaustion of Administrative Remedies**

7. All applicable administrative and procedural prerequisites have been satisfied. Plaintiff filed timely charges with the Equal Employment Opportunity Commission ("EEOC"). On July 13, 2018, the EEOC's Baltimore Field Office issued a Notice of Right to sue. Plaintiff received the notice at her address in Lanham, Maryland on July 20, 2018. This Complaint is filed within 90 days of the receipt of the Notice of Right to Sue.

**Facts Common to All Counts**

8. Plaintiff was hired by Defendant on December 17, 2007 as a Property Accountant.

9. Defendant's Administrative Assistant was responsible for filing until she was terminated in or around November 2010.

10. Plaintiff and Defendant's other property accountant were asked to assume filing duties until the position was filled.

11. Defendant's property accountants generally remained responsible for filing after the Administrative Assistant position was filled. However, the new Administrative Assistant was required to file the documents in the file after Plaintiff updated the files in the system. Otherwise, the Administrative Assistant was assumed a vast majority of the Accounts Payable Coordinator responsibilities.

12. During Plaintiff's employment, Defendant regularly employed the use of a part-time employee and/or Administrative Assistant to assist with filing and other clerical duties.

13. In Plaintiff's role as a Property Accountant, filing and lifting duties comprised less

than 5% of her duties as an employee. Plaintiff spent approximately 15 -20 minutes of work time each quarter on filing.

14. Plaintiff's performance was above satisfactory throughout her employment with Defendant. In fact, Defendant's Senior Vice President, Dennis C. Brownlee concluded that Plaintiff's performed within the top 6% of all Defendant's employees.

15. On or around 2009 and 2012, Plaintiff suffered shoulder injuries.

16. Between 2012 and 2014, Plaintiff requested lifting accommodations and a rearrangement of files to lower shelves for ease of accessibility as a result of her shoulder injuries.

17. Plaintiff's supervisors, Arlene Wright and Dennis Brownlee appeared resistant to Plaintiff's requests for lifting accommodations. Ms. Wright and Mr. Brownlee asserted that Defendant's part-time employee and Administrative Assistant "did not have time to help" Plaintiff with filing despite Plaintiff's injury.

18. Plaintiff sustained an additional shoulder injury on around January 2014.

19. Plaintiff's supervisors continued their refusal to provide assistance after her January 2014 injury. As a result, Plaintiff formally requested accommodations for her disability. Mr. Brownlee responded to Plaintiff's request on September 11, 2014 and informed Plaintiff that she must submit additional information from her physician to receive accommodations. On September 25, 2014, Mr. Brownlee informed Plaintiff that she must provide additional information.

20. Plaintiff had previously notified her employer that she had planned to have her

shoulder surgically repaired on October 23, 2014, and planned to take FMLA leave afterwards, to recover from the surgery.

21. On or around October 2014 Plaintiff met personally with Defendant's President and CEO, Gary Michael, to discuss concerns regarding accommodations for her disability. During the meeting, Mr. Michael promised that Defendant would accommodate Plaintiff.

22. Plaintiff underwent scheduled surgery to repair her shoulder on October 23, 2014.

23. Mr. Michael submitted a written response to Plaintiff's requests, and follow up to the October meeting, on or around December 11, 2014, though the letter was dated October 22, 2014 – one day before Plaintiff's scheduled surgery.

24. On December 15, 2018, Mr. Michael informed Plaintiff that he had referred the accommodations request to Mr. Brownlee.

25. As a result of the surgery, Plaintiff required leave from work so that her shoulder could heal properly. As a result, Plaintiff requested and was granted 10 weeks of FMLA leave and Plaintiff was scheduled to return to work on December 28, 2014. Plaintiff's physician's requested that the date be extended to January 5, 2015.

26. On December 19, 2014, Mr. Brownlee submitted a letter to Plaintiff's physician, Dr. Phillip Omohundro, wherein Mr. Brownlee requested "valid medical certification stating that [Plaintiff] is capable of performing the essential tasks of the job." In his correspondence, Mr. Brownlee acknowledged Plaintiff's anticipated return to work date of January 5, 2015.

27. Despite Plaintiff's employment as a Property Accountant, Mr. Brownlee noted that

Plaintiff's "essential tasks" included a requirement that Plaintiff "Update Tenant Lease File" which required that she "[f]ile in tenant lease file all workpapers, correspondence and charge reports." This would require Plaintiff to lift files which could weigh in excess of 5 pounds.

28. On December 30, 2014, Plaintiff's physicians noted that Plaintiff's original return to work date would be extended until on or about January 26, 2015.  Additionally, Plaintiff's physicians requested that Plaintiff "be assisted with some accommodations" which included "[n]o repetitive use of the right upper extremity [for more than] 10 minutes at a time", "[n]o lifting [more than] 5 lbs", "no reaching above shoulder level" and her physicians noted that Plaintiff's "limitations affect maintaining work papers and support files, [and] making invoices copies." Plaintiff's physicians further noted that she was scheduled to attend physical therapy, twice per week for an additional 8 weeks."

29.  On January 13, 2015, Plaintiff's physicians extended her return date until February 2, 2015.

30. Defendant did not contact Plaintiff or Plaintiff's physician to negotiate an earlier or modified return date.

31. On January 27, 2015, without any prior notice, Defendant, through Mr. Brownlee, notified Plaintiff that her FMLA leave had expired, that it was " essential that this position is occupied," and that she was terminated, effective January 29, 2015, four days before her anticipated return date.

32. On July 28, 2015, Plaintiff timely filed Charges for Discrimination with the Prince

George's County Human Relations Commission. The charges were dual-filed with the EEOC.

**EEOC Reasonable Cause Finding**

33. On April 19, 2018, the EEOC rendered a determination on Plaintiff's disability discrimination charges.

34. Defendant reported to the EEOC that it terminated Plaintiff because it would have been an "undue hardship" to extend Plaintiff's leave until February 2, 2015 and provide accommodations upon Plaintiff's return.

35. EEOC determined that Plaintiff's request for an accommodation for additional leave until February 2, 2015 was not unduly burdensome and that Plaintiff's physicians had solidified a return date.

36. EEOC determined that because Defendant utilized temporary workers to assist Plaintiff and others when Plaintiff was on leave and when Plaintiff was in the office, that Defendant's refusal to allow temporary workers to assist Plaintiff with lifting and filing constituted a denial of a reasonable accommodation request.

37. On April 19, 2018, having concluded that reasonable cause existed to believe Defendant discriminated against Plaintiff, EEOC invited Defendant to engage in informal methods of conciliation.

38. On July 13, 2018, EEOC notified Plaintiff that conciliation attempts had failed and issued Plaintiff a Notice of Right to Sue, which Plaintiff received on July 20, 2018.

## COUNT I: DISABILITY DISCRIMINATION IN VIOLATION OF 42 USC§12111, et. seq.
### (Wrongful Termination)

39. Plaintiff incorporates by reference and re-alleges each and every averment in the preceding paragraphs of this Complaint with the same force and vigor as if fully set forth herein.

40. Plaintiff suffered shoulder injuries on 2009, 2012, and on or around January 2014 for which she required surgery on October 23, 2014.

41. Plaintiff's performance was above satisfactory during the relevant time period.

42. Defendant terminated Plaintiff on January 29, 2015, four days before Plaintiff's February 2, 2015 anticipated return to work date, following a scheduled surgery.

43. An accommodation for Plaintiff's lifting restrictions would not have imposed an "undue hardship" upon Defendant, which had hired an Administrative Assistant and Part Time employee to assist with filing duties.

44. Defendant terminated Plaintiff because she suffered a disability for which she was entitled reasonable accommodations, and reasonable cause existed to believe Plaintiff was terminated for discriminatory reasons.

45. As a result of the acts described herein, Plaintiff has suffered loss of pay and benefits, including retirement benefits, pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other pecuniary and non-pecuniary losses.

46. Defendant's actions described herein constitute discrimination based on Plaintiff's disability. Defendant has engaged and continues to engage in intentional

discrimination, and Defendant's actions constitute intentional, willful, malicious, and flagrant violations of the Plaintiff's rights and a wanton disregard for Plaintiff's well-being and welfare, as to warrant compensatory damages, punitive damages, back pay, front pay, attorneys' fees, expenses, costs, and such other and further relief as the Court deems just.

### COUNT II: DISABILITY DISCRIMINATION IN VIOLATION OF 42 USC§12111, et. seq.
### (Denial of Reasonable Accommodations)

47. Plaintiff incorporates by reference and re-alleges each and every averment in the preceding paragraphs of this Complaint with the same force and vigor as if fully set forth herein.

48. Plaintiff suffered shoulder injuries on 2009, 2012, and on or around January 2014 for which she required surgery on October 23, 2014.

49. After her injuries and prior to taking FMLA leave on October 23, 2014, Plaintiff requested reasonable accommodations to assist with filing and other clerical duties. During Plaintiff's employment, Defendant refused to consistently provide the requested accommodations.

50. On December 30, 2014, Plaintiff requested reasonable accommodations through her Physician, which included lifting restrictions, and extended leave prior to Plaintiff's return to work.

51. An accommodation extending Plaintiff's leave and accommodations to help ease Plaintiff's lifting restrictions would not have imposed an "undue hardship" upon Defendant, which routinely engaged temporary employees to assist Plaintiff and

other employees with filing and other clerical duties.

52. On April 19, 2018, EEOC concluded that reasonable cause existed to believe Defendant discriminated against Plaintiff.

53. Defendant discriminated against Plaintiff by refusing Plaintiff's reasonable accommodations requests.

54. As a result of the acts described herein, Plaintiff has suffered loss of pay and benefits, including retirement benefits, pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other pecuniary and non-pecuniary losses.

55. Defendant's actions described herein constitute discrimination based on Plaintiff's disability. Defendant has engaged and continues to engage in intentional discrimination, and Defendants' actions constitute intentional, willful, malicious, and flagrant violations of the Plaintiff's rights and a wanton disregard for Plaintiff's well-being and welfare, as to warrant compensatory damages, punitive damages, back pay, front pay, attorneys' fees, expenses, costs, and such other and further relief as the Court deems just.

### COUNT III: RETALIATION IN VIOLATION OF 42 USC§12111 et. seq.

56. Plaintiff incorporates by reference and re-alleges each and every averment in the preceding paragraphs of this Complaint with the same force and vigor as if fully set forth herein.

57. Plaintiff suffered shoulder injuries on 2009, 2012, and on or around January 2014 for which she required surgery on October 23, 2014.

58. After her injuries and prior to taking FMLA leave on October 23, 2014, Plaintiff requested reasonable accommodations to assist with filing and other clerical duties. During Plaintiff's employment, Defendant refused to consistently provide the requested accommodations.

59. On December 30, 2014, Plaintiff requested reasonable accommodations through her Physician, which included lifting restrictions, and the reasonable accommodation of extended leave prior to Plaintiff's return to work.

60. Defendant terminated Plaintiff on January 29, 2015, four days before Plaintiff's February 2, 2015 anticipated return to work date following a scheduled surgery.

61. An accommodation for Plaintiff's lifting restrictions would not have imposed an "undue hardship" upon Defendant, which routinely engaged temporary employees to assist Plaintiff and others with filing duties.

62. On April 19, 2018, EEOC concluded that reasonable cause existed to believe Defendant discriminated against Plaintiff.

63. Defendant terminated Plaintiff rather than proving the requested accommodations because she requested reasonable accommodations and because Plaintiff otherwise engaged in protected activity.

64. As a result of the acts described herein, Plaintiff has suffered loss of pay and benefits, including retirement benefits, pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other pecuniary and pecuniary losses.

65. Defendants' actions described herein constitute retaliation based on Plaintiff's

protected activity. Defendant has engaged and continues to engage in intentional discrimination, and Defendant's actions constitute intentional, willful, malicious, and flagrant violations of the Plaintiff's rights and a wanton disregard for Plaintiff's well-being and welfare, as to warrant back pay, front pay, attorneys' fees, expenses, costs, and such other and further relief as the Court deems just.

**WHEREFORE**, Plaintiff respectfully requests the following:

1. An order finding and declaring that Defendant intentionally discriminated and retaliated against Plaintiff;
2. All wages and benefits that Plaintiff would have received but for Defendant's discrimination and retaliation, including pre-judgment interest;
3. Front pay;
4. Compensatory and general damages according to proof, including, but not limited to pain and suffering arising from the humiliation, embarrassment, and anguish Plaintiff was put through, including costs for medical/health care treatment because of Defendant's discriminatory conduct and retaliation;
5. Punitive damages according to proof;
6. Reasonable attorneys' fees and costs of this action;
7. Such other relief as the Court may deem just and proper.

Dated: October 15, 2018                                         Respectfully submitted,

**McCormick Law Firm, LLC**

_____/s/_____

                                        Corlie McCormick Jr.
                                        McCormick Law Firm, LLC
                                        1125 West Street, Ste 200
                                        Annapolis, Maryland 21401
                                        Office: (410)216-3424
                                        Fax:     (410)216-5307
                                        Corlie@McCormickFirm4Justice.com
                                        Fed. Bar No. 28143
                                        Counsel for Plaintiff

## **JURY DEMAND**

Plaintiff demands a trial by jury as to all issues so triable.